**F I L E D**

**UNITED STATES COURT OF APPEALS**

**January 17, 2007**

**TENTH CIRCUIT**

MICHAEL ALAN CHRISMAN,

      Petitioner-Appellant,

v.

MIKE MULLINS,

      Respondent-Appellee.

No. 06-6182

(D.C. No. CIV-04-1226-L)

(W. D. Oklahoma)

---

**ORDER AND JUDGMENT**[*]

---

Before **HENRY, BRISCOE,** and **O'BRIEN**, Circuit Judges.

---

After examining the briefs and appellate record, this panel has determined

unanimously to honor the parties' request for a decision on the briefs without oral

argument. See Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is, therefore,

ordered submitted without oral argument.

Petitioner Michael Alan Chrisman (Chrisman), an Oklahoma state prisoner

sentenced to ten years of imprisonment for a single count of first degree burglary after the

---

[*]This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel. It may be cited, however, for its
persuasive value consistent with Fed. R. App. P. 32.1 (eff. Dec. 1, 2006) and 10th Cir. R.
32.1 (eff. Jan. 1, 2007).

former conviction of a felony, appeals the district court's denial of his 28 U.S.C. § 2254 petition for writ of habeas corpus. We have granted a certificate of appealability (COA), and have received briefing from the state addressing two ineffective-assistance-of-counsel claims which arise from Chrisman's assertion that prior to the entry of his nolo contendere plea he was misadvised concerning whether he would have to serve 85% of his sentence. We exercise jurisdiction pursuant to 28 U.S.C. §§ 1291 and 2253(a) and affirm.

I

Chrisman pled nolo contendere in state court to a charge of first degree burglary after the former conviction of a felony and was sentenced to ten years of imprisonment. Per Chrisman's request, Charles Henry (Henry), who represented Chrisman at both the trial stage and this preliminary appellate stage, then filed a motion to withdraw the plea. The trial court held a hearing on this motion, at which Chrisman was represented by appellate counsel, Anthony McKesson (McKesson). After hearing testimony from Chrisman and Henry, the district court denied the motion to withdraw the plea and that denial was affirmed on direct appeal. Chrisman's application for post-conviction relief was also denied.

Chrisman then sought relief under 28 U.S.C. § 2254, arguing that Henry was ineffective in presenting the motion to withdraw the plea and that he would not have entered the no contest plea but for Henry's erroneous advice. Because of this allegedly erroneous advice, Chrisman argued that he did not enter his plea knowingly and

voluntarily. Chrisman also argued that his appellate attorney, McKesson, was ineffective for failing to amend the motion to withdraw the plea to assert an erroneous advice claim. Finally, Chrisman argued that his no contest plea was void because the district court failed to conduct an adequate inquiry into its voluntariness.

Following an evidentiary hearing, the magistrate judge recommended the denial of Chrisman's petition. After considering Chrisman's objections, the district court issued an order adopting the magistrate judge's report and recommendations and denying the petition. Chrisman filed a timely notice of appeal and moved the district court to issue a COA, which the district court denied. Chrisman then filed an application for a COA with this court, which we granted with respect to the following issues: (1) whether Chrisman was denied his Sixth Amendment right to counsel because his trial counsel, Henry, was ineffective in drafting the motion to withdraw the no contest plea by failing to include his own allegedly erroneous advice as grounds for relief; and (2) whether Chrisman was denied his Sixth Amendment right to counsel because his appellate counsel, McKesson, was ineffective for failing to amend the motion to withdraw the no contest plea to challenge the voluntariness of the plea based on allegedly erroneous advice.

II

Because Chrisman's federal habeas petition was filed after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), it is governed by the provisions of the AEDPA. Wallace v. Ward, 191 F.3d 1235, 1240 (10th Cir. 1999). Under the AEDPA, the appropriate standard of review for a particular claim is dictated by

-3-

the treatment of that claim by the state courts. Because Chrisman's ineffective-assistance-of-counsel claim against Henry was not decided on the merits by the state courts, and is not otherwise procedurally barred, we may exercise our independent judgment in deciding the claim. See LaFevers v. Gibson, 182 F.3d 705, 711 (10th Cir. 1999). In this respect, we review the federal district court's conclusions of law de novo and its findings of fact for clear error. Id.

Conversely, because Chrisman's ineffective-assistance-of-counsel claim against McKesson was adjudicated on its merits by the state courts, Chrisman is entitled to federal habeas relief on that claim only if he can establish that the state court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Id. § 2254(d)(2). As such, we may grant the writ if we determine the state court arrived at a conclusion opposite to that reached by the Supreme Court on a legal question; decided the case differently than the Supreme Court on a set of materially indistinguishable facts; or unreasonably applied the governing legal principle to the facts of a prisoner's case. Hain v. Gibson, 287 F.3d 1224, 1229 (10th Cir. 2002).

III

Pursuant to the applicable Oklahoma statute, persons convicted of first degree burglary must serve at least 85% of any prison sentence before becoming eligible for parole.

See 21 Okla. Stat. § 13.1(12). It is undisputed that this 85% requirement applies to Chrisman. As noted, the district court denied Chrisman's claim that his trial and appellate counsel rendered ineffective assistance of counsel in arguing a motion to withdraw his plea of nolo contendere by failing to assert their own allegedly erroneous and misleading advice regarding the applicability of the 85% requirement. Chrisman now challenges the district court's denial of his § 2254 petition.

Chrisman essentially argues that the district court erred in finding that (1) he was not told by his attorneys that Oklahoma's 85% rule was inapplicable, and (2) that he was not told, explicitly or implicitly, that he would "likely" make parole within the first eight and a half years of his ten-year sentence. This, Chrisman asserts, prejudiced him by inducing him to unknowingly and involuntarily enter a plea of nolo contendere. As such, Chrisman concludes, the district court's denial of his § 2254 petition relied upon a misconstruction of the facts and a misapplication of the law.

A defendant making an ineffective-assistance-of-counsel claim must show both that counsel's performance "fell below an objective standard of reasonableness" and that "the deficient performance prejudiced the defense." Strickland v. Washington, 466 U.S. 668, 687-88 (1984). Review of counsel's performance under the first prong of the Strickland test is highly deferential. "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Id. at 690. To be deficient, the performance must be "outside the wide range of professionally competent assistance." Id. Counsel's decisions are presumed to represent "sound trial

strategy"; "[f]or counsel's performance to be constitutionally ineffective, it must have been completely unreasonable, not merely wrong." Boyd v. Ward, 179 F.3d 904, 914 (10th Cir. 1999) (internal quotation marks omitted). As for the prejudice prong, the defendant must establish a reasonable probability that "but for counsel's unprofessional errors, the result of the proceeding would have been different." United States v. Stevens, 978 F.2d 565, 568 (10th Cir. 1992) (internal quotation marks omitted). If the defendant is unable to show either "deficient performance" or "sufficient prejudice," the ineffectiveness claim will fail. Strickland, 466 U.S. at 700.

Gross misadvice about parole eligibility can render legal assistance ineffective and invalidate a plea. See Beavers v. Saffle, 216 F.3d 918, 925 (10th Cir. 2000); see also Hill v. Lockhart, 474 U.S. 52, 56-57 (1985). Conversely, the Sixth Amendment does not encompass those aspects of the prosecution which are collateral. Varela v. Kaiser, 976 F.2d 1357, 1358 (10th Cir. 1992) (holding that counsel's failure to advise alien client that deportation was a possible collateral consequence of guilty plea did not amount to ineffective assistance of counsel). Restrictions on parole eligibility involve "collateral" consequences of a nolo contendere plea. See Holmes v. United States, 876 F.2d 1545, 1549 (11th Cir. 1989); see also Hill v. Lockhart, 731 F.2d 568, 570 (8th Cir. 1984) ("[t]he details of parole eligibility are considered collateral rather than direct consequences of a plea") (citations omitted). Thus, the failure to inform of consequences collateral to a plea, such as the applicability of Oklahoma's 85% requirement, does not render the plea involuntary, does not implicate the Sixth Amendment, and, therefore, cannot be the grounds for a viable ineffective-assistance-

-6-

of-counsel claim. See Hill, 474 U.S. at 55 (holding that a court's failure to inform defendant at plea hearing of his parole eligibility does not offend a federal constitutional right); see also Perkins v. Sirmons, 2006 WL 3012880, * 3 (10th Cir. Oct. 24, 2006) (unpublished opinion) (holding that state court's failure to inform petitioner that "he would be ineligible for parole prior to serving 85% of his sentence" was merely a failure to inform petitioner about a collateral consequence of the plea which was insufficient to invalidate a plea agreement).

*Ineffective-Assistance-of-Counsel Claim Against Henry*

In support of his contention that the district court erred in denying him habeas relief, Chrisman relies on testimony provided at the evidentiary hearing and elsewhere. Specifically, Chrisman argues that his own testimony, the testimony of McKesson, as well as the testimony of Robert Ravitz (Ravitz), Public Defender for Oklahoma County, establishes that Henry misadvised him that he would not have to serve 85% of his sentence. Chrisman also argues that the record clearly indicates that he was misled into believing that by pleading guilty and participating in a Drug Offender Work Camp (DOWC), he would not be subject to the 85% requirement. Henry's failure to raise these alleged errors in the motion to withdraw the plea, Chrisman concludes, amounts to ineffective assistance of counsel.

Regarding Chrisman's first argument, that Henry erroneously advised him that he was not subject to the 85% requirement, this is belied by the testimony of both Henry and Chrisman. As an initial matter, Henry testified that he never told Chrisman that the 85% requirement was inapplicable. Moreover, though Chrisman filed an affidavit asserting that he had been told by Henry that the 85% requirement did not apply, Chrisman stated

otherwise at the evidentiary hearing. Specifically, when asked when he was told by Henry that he would not have to serve 85% of his sentence, Chrisman responded, "[Henry] actually – when he told me that if I take this DOWC program and successfully complete it I would then likely make parole, that's telling me that I would not have to serve 85 percent." Appx., Vol. II, pp. 70-71. Likewise, when asked a second time whether he had either asked or been told by Henry whether he would have to serve 85% of his sentence, Chrisman essentially conceded that he had not by stating, "No, he – I don't recall if [Henry] specifically told me I would not have to do 85 percent. But telling me that if I complete the DOWC program within a year – I mean, it is a 12-month program – I would then likely make parole, is telling me that I would not have to serve 85 percent, as far as how my mind thinks." Id. at 73-74.

McKesson, on the other hand, testified at the evidentiary hearing that some time after both Chrisman's sentencing and the district court's disposition of the motion to withdraw the plea Henry told him that Chrisman did not qualify for the 85% requirement. Id. at 236 ("[M]y recollection is that Mr. Henry said that he did not believe that based upon the time in which the crime had been committed, that it would have fallen under this statute requiring 85 percent at that time."). However, as the district court correctly pointed out, the value of this evidence is limited, as McKesson merely speculated that Henry also made this alleged erroneous statement to Chrisman. Similarly, as regards Ravitz's testimony, he had no direct involvement with the events in question and could only speculate as to what Henry may or may not have told Chrisman. As a result, his testimony is not particularly helpful in determining whether the district court clearly erred in rendering its factual findings.

We conclude that the district court did not err in determining that Henry did not advise Chrisman that the 85% requirement was inapplicable. The district court heard testimony from those both directly and indirectly involved and found Chrisman was not erroneously advised. There was ample evidence that Henry did not advise Chrisman that the 85% requirement was inapplicable. Consequently, we conclude that the district court did not err in concluding that Henry's representation fell within the wide range of professionally competent assistance.

As for Chrisman's alternative argument, that he was essentially misled into believing the 85% requirement was inapplicable, it too lacks merit. Specifically, rather than arguing that he had been the victim of Henry's gross misadvice, Chrisman stated for the first time at the evidentiary hearing that Henry had led him to believe that if he completed a particular drug program while he was in prison, he would not be bound by the 85% rule and would be a "likely" candidate for early parole.

This argument fails for two reasons. First, there is ample evidence supporting the district court's conclusion that Chrisman was not told, explicitly or implicitly, that he would "likely" make parole within the first eight and a half years of his ten-year sentence. By way of example, Chrisman admitted on the stand that after reviewing all the pleadings, letters, and correspondence he had filed, that none of these documents made a claim regarding advice that if he completed DOWC he would likely be eligible for parole and, therefore, not have to serve 85% of his sentence. As such, there was nothing in these documents that would have notified Henry of the need to include an argument regarding the 85% requirement in

the motion to withdraw the plea.

Next, when Henry was asked if he told Chrisman that he would be paroled after completing the program, Henry testified that he would not have given such advice. By way of explanation, he testified that even by completing DOWC there was no way that a defendant in Chrisman's position could get out before serving 85% of his sentence. Again, therefore, Henry had no reason to reference the 85% requirement in the motion to withdraw the plea.

Henry also testified that the reason for negotiating the DOWC into the plea agreement was because Chrisman needed drug treatment. Chrisman's need for drug treatment was also supported by the contents of Henry's notes, which were identified by Henry and entered into evidence. Likewise, assistant district attorney Robert Swartz (Swartz), who prosecuted the underlying state court action, corroborated Henry's testimony and stated that when Henry would insert DOWC as part of a plea agreement, it was because the offender needed treatment and not as a way of early release. Swartz also had a notation in his file that because of Chrisman's continued criminal activity he would object to any early release and, if the DOWC program would have allowed Chrisman an early release, he would not have agreed to it. Additionally, evidence presented at the evidentiary hearing indicated that placement in the DOWC program was a matter solely within the discretion of the department of corrections, and not within the discretion of the parties.

Second, as a matter of law, the district court was correct in noting that even if the recommendation of placement in DOWC contributed to Chrisman's confusion, his plea

would not be rendered involuntary based upon a unilateral expectation of parole. See Worthen v. Meachum, 842 F.2d 1179, 1184 (10th Cir. 1988) ("A defendant's expectation of parole that is based on a bad guess by his attorney does not render a plea involuntary."), overruled on other grounds, Coleman v. Thompson, 501 U.S. 722 (1991). And, as noted above, the failure to inform an accused of parole ineligibility does not render legal assistance ineffective. Thus, even if Henry failed to tell Chrisman about the 85% requirement, his legal representation was not ineffective.

We conclude that the district court did not err in finding that Henry did not tell Chrisman, either explicitly or implicitly, that he would likely make parole within the first eight and a half years of his ten-year sentence. We conclude as well that Henry's conduct fell within the wide range of professionally competent assistance.

*Ineffective-Assistance-of-Counsel Claim Against McKesson*

Chrisman next argues that McKesson failed to advise, and actually misadvised, him on the issue of whether he was subject to the 85% requirement of 21 Okla. Stat. § 13.1(12). This argument also lacks merit.

Chrisman and McKesson both testified that they met prior to the hearing on the motion to withdraw his plea. Chrisman testified that at that time McKesson told him that the 85% requirement was inapplicable. Chrisman also maintains that he told McKesson at that time that he was advised by Henry that he would not have to serve 85% of his sentence and that McKesson ought to have raised this issue in an amended motion to withdraw the plea and at the subsequent hearing. Chrisman argues further that the following exchange between

-11-

McKesson and the state court judge presiding over Chrisman's underlying criminal case, which took place at the hearing on his motion to withdraw the plea, corroborates his assertion:

| | |
|---|---|
| Court: | Okay, I'm sorry. Go ahead, Mr. McKesson. Are you done? |
| McKesson: | No, Judge. The only other thing was that also the agreement also included a drug offender work camp. |
| Court: | Recommendation of DOWC. |
| McKesson: | Yes, sir. And with that, Your Honor, nothing else. |
| Chrisman: | Mr. Henry did say something about he was going to fix the deal to where it doesn't fall under the 85 percent or whatever. It wasn't established when the deal was made, but I don't know if that's relevant right now or not since you're talking about the deal. |
| Court: | Okay. Anything else? |
| McKesson: | Nothing else. |

Appx., Vol. IV, Ex. 11, p. 11.

We agree with the district court that the above referenced quote that Henry "was going to fix the deal to where it doesn't fall under the 85 percent or whatever" makes little sense if, as Chrisman suggests, he had just been told by McKesson that the 85 percent requirement was inapplicable. Moreover, there are other reasons compelling us to conclude that the district court did not err in concluding McKesson did not render ineffective assistance of counsel. First, as noted above, Chrisman acknowledged at the evidentiary hearing that he could not remember whether Henry had told him that the 85% requirement was inapplicable,

but rather, he testified that Henry had given unwise advice about the likelihood of parole upon completion of the DOWC. Again, this account would not invalidate the plea based on grounds involving ineffective assistance of counsel as the evidence, at best, suggests an erroneous assumption on the part of Chrisman, rather than explicit or implicit misadvice on the part of either Henry or McKesson. Pursuit of this theory by McKesson in state court, therefore, would have been futile.

Second, in adopting the report and recommendations of the magistrate judge, the district court determined that McKesson was a more credible witness than Chrisman, and that McKesson's version of events was more consistent with the written record than was Chrisman's. We see no reason to second guess the district court in this regard. We cannot conclude that the district court's denial of Chrisman's § 2254 petition "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Id. § 2254(d)(2).

IV

In sum, Chrisman has failed to establish that the district court erred in denying the relief sought in his § 2254 petition. Regarding Chrisman's ineffective-assistance-of-counsel claim against Henry, we find no fault with the district court's findings of fact, nor do we conclude that the district court clearly erred in its conclusions of law. As for his ineffective assistance of counsel claim against McKesson, Chrisman has failed to establish that the state

-13-

court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Id. § 2254(d)(2).

Accordingly, we AFFIRM the district court's denial of Chrisman's 28 U.S.C. § 2254 petition for writ of habeas corpus.

Entered for the Court

Mary Beck Briscoe
Circuit Judge