FILED
United States Court of Appeals
Tenth Circuit

January 29, 2016

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

WRIGHTY* W. VELARDE,

      Petitioner - Appellant,

v.

LOU ARCHULETA, Warden, Fremont
Correctional Facility; THE ATTORNEY
GENERAL OF THE STATE OF
COLORADO,

      Respondents - Appellees.

No. 15-1250
(D. Colorado)
(D.C. No. 1:14-CV-02356-CMA)

**ORDER DENYING CERTIFICATE OF APPEALABILITY**

Before **HARTZ**, **BALDOCK**, and **MORITZ**, Circuit Judges.

Wrighty Velarde pleaded guilty to second-degree murder and attempted sexual

assault of his wife in Colorado state court on March 16, 2007. He seeks a certificate of

appealability (COA) so he can appeal the denial by the United States District Court for

the District of Colorado of his application for relief under 28 U.S.C. § 2254. *See* 28

U.S.C. § 2253(c)(1)(A) (requiring COA to appeal denial of habeas relief to state

prisoner). He contends that his plea and conviction should be set aside because (1) his

---

* In the caption of his initial pleading in federal court, Mr. Velarde mistyped his first
name as "Wighty" rather than "Wrighty." The misspelling has appeared in numerous
later captions.

counsel coerced him by threatening to withdraw if he did not accept the plea and (2) his counsel gave him inaccurate information about when he would be eligible for parole. We deny a COA and dismiss the appeal. Mr. Velarde failed to exhaust either claim in state court and no reasonable jurist could rule that his state-court attorneys were ineffective in failing to preserve the claims.

## I. Background

The state presentence report provided the following summary of Mr. Velarde's offense:

> [O]fficers discovered the victim's deceased body in a hotel room, with blood on the mattress, bloody bedding on the floor, and bloody bedding in the bathroom. It looked like there had been a struggle in the room. [Mr. Velarde] thereafter told the police the following account of the victim's death. He said that he and the victim, who was his wife, had been drinking heavily before engaging in "real hard sex," which included his penetrating her anally, with both his penis and his fingers. He further said that she began bleeding heavily, originally saying that she was bleeding from menstruation but later adding that he noticed blood coming from her anus. He said that she then lost consciousness, and he could not revive her with CPR. He said that he believed the victim died from a heart attack. The doctor performing the autopsy concluded that the victim bled to death from injuries to her anus.

*People v. Velarde* (Colo. App. No. 12CA2356, June 26, 2014) (unpublished). According to the state's response to Mr. Velarde's § 2254 application:

> [Mr. Velarde] admitted in a police statement that he (1) inserted his fingers into his wife's anus with such force as to cause her to bleed profusely, while she was so drunk as to be drifting in and out of consciousness; (2) remained in the motel room while she bled to death (and for several hours thereafter); (3) dressed her body; and then (4) left the motel room, all without calling 911 or seeking any other kind of help for her.

R. at 51. The state trial judge said:

2

[A]fter the events in that room, and after [Mr. Velarde] realized that his wife—his wife, the love of his life—was dead, he put her clothes on, got in a car, and drove away, leaving his wife in that room; beds covered with blood, the sheets covered with blood, the room covered with blood. He didn't call 9-1-1, didn't stop some place to achieve assistance, didn't look out for the woman that he loved, he drove away. He was stopped in Colorado Springs by the police department down there, and when apprehended then he made mention of something occurring in that room.

R. at 26.

Mr. Velarde was initially charged with first-degree felony murder and two counts of sexual assault. His plea agreement stipulated to a concurrent sentence of 33 years' imprisonment for second-degree murder and six years' imprisonment for one count of attempted sexual assault. Before sentencing, Mr. Velarde moved to withdraw his plea, contending that he had been coerced into pleading guilty by his trial counsel and that he had a defense that his wife had died of a heart attack.

On the coercion issue, which Mr. Velarde is pursuing in this court, he testified at the hearing on his motion (1) that his understanding was that the fee arrangement with defense counsel did not cover going to trial and (2) that his lawyer advised him that he would no longer represent him if he did not plead guilty. His father, however, testified that Mr. Velarde was not well informed about the financial details of the representation. Contrary to his son's testimony, he stated that the fee arrangement covered all proceedings including trial.

Most importantly, Mr. Velarde was contradicted by the experienced attorney who represented him at his plea. Counsel testified as follows: He had participated in more

3

than 160 jury trials as a criminal defense attorney, including over 10 murder trials, and had handled extensive postconviction and appellate work, including death-penalty cases. His fee for representing Mr. Velarde was $70,000 to $80,000 for representation through trial, although there would be a partial refund if trial was avoided. The fee was paid by Mr. Velarde's family over a period of months. He informed Mr. Velarde of the fee arrangement but never used it as a threat. One of the first things counsel did was interview the coroner for an hour or hour and a half. He learned from the coroner that the victim's death was caused "by the defendant reaching inside the victim and causing enough damage that she bled to death." R. at 217. He then consulted another coroner, and discussed the evidence with Mr. Velarde. He "did not see that this case could be defended on a claim that she died, but not because of Mr. Velarde's conduct." *Id.* at 235. After several weeks of extensive negotiations with prosecutors, he reached a plea deal of 33 years' imprisonment. He told Mr. Velarde that this was the best deal they could negotiate, and if he went to trial he would very likely receive a life sentence.

In addition, the prosecution read into the record Mr. Velarde's statement in the plea agreement that no one had coerced or threatened him to plead guilty.

After this evidence defense counsel abandoned any claim of coercion by defense counsel. He at no time raised the claim now presented to us that Mr. Velarde was misinformed about the possibility of parole.

The district court denied the motion to withdraw and sentenced Mr. Velarde to the stipulated sentence. Mr. Velarde did not file a direct appeal but sought postconviction

4

relief by filing a motion under Colorado R. Crim. P. 35(c) alleging that trial counsel was ineffective for failing to (1) investigate the heart-attack defense, (2) consider an intoxication defense, and (3) advise him of his right to testify. He also alleged that trial counsel was ineffective for failing to appeal the denial of the motion to withdraw his plea. The court denied the motion except for the claim that counsel was ineffective in failing to appeal the denial of the motion to withdraw. It permitted him to file an untimely appeal of the denial. Mr. Velarde then appealed the denial of his motion to withdraw and the denial of his other Rule 35(c) claims. The Colorado Court of Appeals affirmed on all grounds. Mr. Velarde was represented by counsel throughout the proceedings.

Mr. Velarde filed his pro se § 2254 application on August 25, 2014, raising three claims of ineffective assistance of counsel—failure to investigate possible defenses, failure to provide proper advice regarding parole eligibility, and failure to seek suppression of his statements to police—and one claim challenging the voluntariness of his plea. The district court denied relief, holding that the claim that counsel failed to investigate possible defenses lacked merit and that the remaining claims were procedurally barred for failure to raise them in the state postconviction proceedings. The district court further held that Mr. Velarde had failed to show cause and prejudice excusing his procedural default because his claims were not substantial.

In this court Mr. Velarde reasserts (1) that his guilty plea was coerced because of his trial counsel's threat to withdraw from the case if he did not accept a guilty plea, and (2) that his trial counsel was ineffective for failing to correctly advise him before he

5

pleaded guilty that he would be ineligible for parole until he had served 75% of his term of imprisonment.

## II. Discussion

A COA will issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This standard requires "a demonstration that . . . includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotation marks omitted). In other words, the applicant must show that the district court's resolution of the constitutional claim was either "debatable or wrong." *Id.* If the application was denied on procedural grounds, the applicant faces a double hurdle. Not only must the applicant make a substantial showing of the denial of a constitutional right, but he must also show "that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.* "Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further." *Id.*

One potential procedural bar is failure to exhaust state-court remedies. *See* 28 U.S.C. § 2254(b)(1); *Frost v. Pryor*, 749 F.3d 1212, 1231 (10th Cir. 2014) (generally, "[a] federal court cannot grant a state prisoner's habeas petition unless the petitioner has

6

exhausted his claims in state court."). For a claim to be exhausted, the "state prisoner must give state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *Id*. (internal quotation marks omitted). We treat a claim as exhausted, however, if it is now too late to pursue relief in state court. *See Gray v. Netherland*, 518 U.S. 152, 161 (1996) (exhaustion requirement "is satisfied if it is clear that the habeas petitioner's claims are now procedurally barred under state law." (brackets and internal quotation marks omitted)); *see also Coleman v. Thompson*, 501 U.S. 722, 732 (1991) ("A habeas petitioner who has defaulted his federal claims in state court meets the technical requirements for exhaustion; there are no state remedies any longer 'available' to him."). But exhaustion in this manner is not much advantage to the § 2254 applicant. "[T]he procedural bar that gives rise to exhaustion provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas corpus review of the defaulted claim, unless the petitioner can demonstrate cause and prejudice for the default." *Gray*, 518 U.S. at 162. "Cause excusing a procedural default must be some objective factor external to the habeas petitioner, not fairly attributable to him, that impeded his efforts to comply with the procedural rule in question." *Spears v. Mullin*, 343 F.3d 1215, 1255 (10th Cir. 2003). And the prejudice prong requires the applicant to show "actual prejudice as a result of the alleged violation of federal law." *Fairchild v. Trammell*, 784 F.3d 702, 719 (10th Cir. 2015) *cert. denied sub nom. Fairchild v. Warrior*, No. 15-6877, 2016 WL 100628 (U.S. Jan. 11, 2016). The most common "cause" is

ineffective assistance of counsel for failure to preserve the claim in state court. *See, e.g.*, *Martinez v. Ryan*, 132 S. Ct. 1309, 1318 (2012). Counsel is ineffective if (1) "counsel's representation fell below an objective standard of reasonableness" as measured "under prevailing professional norms," *Strickland v. Washington*, 466 U.S. 668, 688 (1984), and (2) this deficient performance prejudiced the defense, *id.* at 692.

Mr. Velarde seeks a COA on two issues: (1) whether his plea was coerced by a threat to withdraw by trial counsel and (2) whether his trial counsel was ineffective in misinforming him about parole eligibility. Neither was exhausted in Colorado state court, and now both are procedurally defaulted under Colo. R. Crim. P. 35(c)(3)(VII) ("The court shall deny any claim that could have been presented in an appeal previously brought or postconviction proceeding previously brought except [in several circumstances not present here]."). The first issue was raised in Mr. Velarde's motion to withdraw his plea. But it was abandoned (for good reason) after defense counsel heard testimony at the hearing. The second was never raised. We hold that no reasonable jurist could rule that counsel was ineffective for failing to exhaust either issue. We address them in turn.

### A. Coercion by threatening to withdraw

Mr. Velarde claims that he was coerced into pleading guilty by his attorney's representations that he would withdraw if Mr. Velarde went to trial. At the hearing on his motion to withdraw, he testified that the fee arrangement with counsel did not provide for going to trial and that he thought he would lose his lawyer if he did not plead guilty. But

8

that testimony was undermined by testimony by his father and his original trial counsel, which showed that if there was any pressure from trial counsel, it was only to explain to Mr. Velarde his dire situation, where his best choice was not an attractive one. *See Fields v. Gibson*, 277 F.3d 1203, 1214 (10th Cir. 2002) ("Advice—even strong urging by counsel does not invalidate a guilty plea." (internal quotation marks omitted)). Further, Mr. Velarde told the Colorado trial court that accepted his plea that no one had pressured, coerced, or threatened him in some way to enter the guilty plea against his will. *See United States v. Sanchez-Leon*, 764 F.3d 1248, 1259 (10th Cir. 2014) ("Although we review the validity of a plea de novo as a legal conclusion, solemn declarations made in open court carry a strong presumption of verity." (internal quotation marks omitted)). Only a desperate attorney would have pursued the claim after hearing the evidence at the hearing on the motion to withdraw. Failure to exhaust was not deficient performance.

**B. Misinformation on Parole Eligibility**

Mr. Velarde argues that his trial counsel was ineffective for failing to advise him that he would be required to serve three-fourths of his prison sentence under Colo. Rev. Stat. Ann. § 17-22.5-403(2.5) (West). He contends that he was told that he would be parole eligible in 10 to 12 years, although he will actually have to serve 25 years of his 33-year stipulated sentence. He asserts that "[b]ut for this misadvice [he] would not have entered [his] plea and instead would have insisted upon going to trial." R. at 10. This claim was never raised in state court. But a fully competent attorney could easily have decided that it would not be worth raising, because Mr. Velarde's present assertion that

9

he would have gone to trial if he had known that he could not be released for 25 years is not a credible one. *See Hill v. Lockhart*, 474 U.S. 52, 59 (1985) (To prove that counsel's deficient performance prejudiced him in entering a guilty plea, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.").[1]

First, the case against Mr. Velarde was very strong. Although Mr. Velarde contends he had a legitimate chance of acquittal based on the heart-attack defense, his highly experienced counsel—who spent one-and-one-half hours interviewing the coroner who performed the autopsy and later interviewed another coroner about the matter— found no evidence to support this defense. Counsel negotiated long and hard and informed Mr. Velarde that he had obtained the best plea agreement possible.

Second, Mr. Velarde's own testimony at the hearing on his motion to withdraw his plea undermines his present argument. He gave two versions of his thinking before his

---

[1] For purposes of this discussion, we can assume without deciding that misadvice regarding parole eligibility can constitute deficient performance under *Strickland*. Although we recognize that several of our opinions have suggested that counsel is not ineffective for failing to advise a defendant on the collateral consequences of a guilty plea, *see Varela v. Kaiser*, 976 F.2d 1357, 1358 (10th Cir. 1992); *Chrisman v. Mullins*, 213 F. App'x 683, 687 (10th Cir. 2007), these cases were decided before *Padilla v. Kentucky*, 559 U.S. 356 (2010), which held that failure to advise a defendant about the deportation consequences of a guilty plea (certainly a "collateral" consequence) constituted deficient performance. *Id.* at 369. This court has not yet had occasion to determine whether the reasoning of *Padilla* applies to misadvice regarding parole eligibility, but several state courts have decided it does. *See* Angela J. Rollins, *Collateral Consequence Considerations for Illinois Practitioners after Padilla v. Kentucky*, 102 Ill. Bar J. 76, 79 (2014) (collecting cases on advice regarding parole eligibility post-*Padilla*). Regardless, Mr. Velarde cannot show prejudice.

plea, and both contradict his assertion that being informed of a longer parole-eligibility time would have influenced his decision. His initial version was that he originally pleaded guilty because he blamed himself for his wife's death (and actually wanted the death penalty) but later decided to withdraw his plea because he felt God would forgive him. He testified on cross-examination:

> [W]hen I first have my first lawyer, I asked him specifically, because I felt so bad that I lost the love of my life and everything that was important to me, that I asked him if he would—if he could get the death penalty for me, and he told me that—he told me that—to go get another lawyer. And—and so I stopped talking to him about the death penalty and I . . . searched myself and I searched and I searched and I found out that—that God is a forgiving God and—and that's when I decided to—that I should take back my plea—and that I should stop blaming myself, and that I believe me and my wife were in it together and that it was a tragic accident.

R. at 181. Of course, if his motive to plead guilty was the desire to be sentenced harshly, the availability of parole was irrelevant.

Later, however, Mr. Velarde gave a different version. He testified that he did not like the plea agreement and signed it only because of his attorney's coercion. During that testimony he said that the possiblility of parole (which his attorney had mentioned) did not influence him because after "digging into the law library, I found out that sexual offenders usually don't get any respite from the state." R. at 192. If he believed that he was not going to be released early on parole, the availability of parole at an earlier date could have made no difference.

In light of the strength of the case against Mr. Velarde, the advice of his attorney that he could not get a better deal, and the contradictory testimony about what motivated

11

his plea, a reasonably competent postconviction attorney could conclude that there was little, if any, chance of ultimate success in claiming that he would not have pleaded guilty had he been accurately informed about his eligibility for parole. Failing to raise that claim in state court was not ineffective assistance of counsel. Therefore, reasonable jurists could not debate the district court's decision that Mr. Velarde's procedural default was not excused.

## III. Conclusion

We DENY Mr. Velarde's application for a COA and DISMISS the appeal. Appellant's motion to proceed *in forma pauperis is* DENIED.

ENTERED FOR THE COURT


Harris L Hartz
Circuit Judge

12